Good afternoon, Your Honors. Peter Sessions on behalf of the appellant, Donna Scharff, in this matter. I'd like to reserve two minutes, if I may, for rebuttal. As the Court is aware, this is an ERISA case, and the issue in this case is whether it's fair to apply a contractual time limit on a planned beneficiary's right to sue when that time limit is, A, never communicated to the claimant in any letters with her, and, B, when that limit is not conspicuously placed in planned documents for a claimant with an ERISA claim. I'm going to ask you about the latter piece of that first. Your client applied for disability benefits, and the summary plan description on disability benefits is about 10 pages long, with fairly large print. And it says under claims appeal procedure, it's important to note, and I'm going to leave out some words, any action at law and equity must be commenced within one year of the denial of the appeal of the claim. And I guess I don't understand what's unclear about that in terms of either placement, wording, type size, any of that. Well, our concern is with the placement of that limitation. There are two relevant sections of this plan. That also doesn't refer to ERISA specifically, does it? Well, the whole summary plan description is in the ERISA document, right? So, but you would have it placed where for, in order, you would require, in order for it to be effective, that it be placed in some place other than in the discussion of disability benefits for which she was applying. Well, let me answer your question this way. The plan has two relevant sections that we need to address, and one is the section in which this language appears, which is the section that discusses what disability benefits are available. And there's another section which is, discusses claims procedure and tells claimants what their rights are under ERISA. And it's our contention that any discussion of a contractual time limit on a claimant's right to sue, especially when that limit is, drastically reduces it from the default four years to one year, needs to be in the section that talks about a claimant's ERISA rights and what rights and procedures that they can expect. You know, my frustration with this is if it were in the general section that dealt with that, you'd be here arguing, well, she was only applying for disability benefits. So the only thing that she reasonably could be expected to read is the part about disability benefits. And, you know, the heading is claims appeal procedure. So she says, aha, disability in big letters at the top of the page, claims appeal procedure, that's me. I've got a disability claim and I want to appeal it. So here's what I have to read, this one paragraph. I mean, you're saying as a matter of law, this is not something she should have read or would have read, because the heading at the top of the page is disability, which is the very benefit she was seeking. I just have difficulty with that. Well, what we're talking about is the reasonable expectations of an ordinary person reading this plan. And what we're arguing is that the reasonable person in reviewing this plan and looking at the headings would say, would look at the section that talks about their rights under ERISA and their rights to bring a civil action in determining whether there's a time limit on which to sue. Well, aren't you, I mean, I don't know if you already did this or not, I can't even remember at this point. But, I mean, even in the section on disability, I mean, the conspicuousness of the one-year SOL, it's under claims appeal procedure. It's not saying, I mean, I guess I would be thinking it should be one-year limitation or something that would be larger than that. But, I mean, I don't know if that is sort of buried in one small section in the disability section of this. Or the other problem I have with this is that in each of the three denial letters, they asserted, they said, Prudential, is it? No, Raytheon. Raytheon said, you may bring a civil action, but never once in its lifetime. And the third denial letter said that you must bring it within one year. So it's not just, and it is, I think it's clear, my problem with it is that it's just not conspicuous. Well, that is part of the argument that we made in our brief. And our argument is that if a plan is going to limit a time to which a, in which a claimant can bring a suit, especially when a plan is going to reduce it by as much as Raytheon has done in this case, that that information needs to be placed more conspicuously. At the very least, it should be bolded or underlined in some way. Ideally, it would have its own caption instead of being hidden under a section called Claims Appeal Procedure. And ideally, that time limit would be in both parts of the plan. But Claims Appeal Procedure is what she was doing. If her claim had been granted, she wouldn't need to appeal it anywhere, right? I mean, so... That's right, that's right. But what I'm arguing is that there are two places that you can look in this plan to try and find this information. And it's only in one, and it's only under a heading that makes no mention of a limit on a right to suit. So I think the obligation is on Raytheon, and as a plan administrator, as a fiduciary, to really call attention to the fact that, look, we're drastically limiting your rights here, and to make every effort to not only emphasize it, but put it in as many sections of the plan as may be relevant. And our argument is that, at the very least, it should have been in the section that talks about the claimants' rights under ERISA and their right to bring a civil action. Well, yeah, under the administrative section, it has enforced your rights. And there, the one year is never mentioned. That's right. There's a section in the administrative section... It's like the letters. You can sue, you can sue, you can sue, but no notice of when that right to sue ends. That's right. The section in the administrative section of the plan that says... says, under ERISA, there's steps you can take to enforce the above rights, and that includes bringing a civil action. But there's no mention of a time limit. And so that's our primary difficulty with that part of the plan. I'd also like to, since I see my time is running down, address the other argument we've made regarding a claim administrator's duty to inform claimants when they're reducing the time limit they have within which to sue. If you went on your first argument, we wouldn't need to read your second argument, correct? That's true for both arguments, Your Honor. The reasonable expectations argument is that Ms. Scharf should not have reasonably expected that she only had one year in which to sue, and therefore it should not be applied to her. And the duty to inform argument states that a fiduciary has a duty to inform a claimant of the time limit, and if they don't, then they waive that. How many minutes do you have left? Two. All right. I'll have a seat then. I'm here, Ms. Tapers, for Appellee's, Your Honor. Let me start off by addressing the issues that seem to be concerning the Court here. First of all, I'd like to start by explaining why it is that the fact that the limitations provision was not in the letter was not a breach of fiduciary duty. You need to go back to the ERISA scheme. The statute provides the statute tells you what should go into the SBB. The regulations then. It's going to what? The summary plan description. Oh, sorry. I'm sorry. The summary plan description. Oh, that's okay. The regulations, Your Honor, and I'm referring to 29 CFR 2560.503-1, that set of regulations, then tells you what provisions in the SBB must be reproduced in the letters. And those refer to the internal appeal procedures, the procedures that the claimant has got to perfect and exhort. But would you be violating ERISA law if you put in the letter when you tell the person you have the right to sue, but you have to do it when you're from the denial? You're not violating ERISA law. No, I didn't say we were violating ERISA law. It wouldn't be a violation of ERISA law. But here is the thing. The question that is being posed here is, why wouldn't the claim? Why wouldn't the claim administrator have done it? It was easy enough to do it. I assume that's Your Honor's concern, it was easy enough to do it. But I don't really think that is a question. The question is why wouldn't the claim administrator do it? I'm sorry? You say why wouldn't the administrator do it? Yes. I'm suggesting that that was just... Who's administering the claim? MetLife is the claim administrator, Your Honor. Do they pay it, though? They're paid to administer the claim, yes. Yeah. It is, however, a self-funded plan. MetLife is not the insurer here. Yeah, okay. I'm sorry. Did you have a... So what do they have to gain by a one-year statute? MetLife? Yeah. Nothing, nothing whatsoever. MetLife has nothing to gain from it. It's the Raytheon plan. MetLife is merely the claim administrator. MetLife has nothing to gain from a one-year statute. Well... All right. Go ahead. Your Honor, here's the question. The question is how would a claim administrator know, ex ante, which provisions of the SPD it should reproduce in the letter? There are lots of provisions in the SPD, contractual provisions, that reside in loss of benefits or disqualification. This is kind of key information, isn't it? Because under ERISA, the statute of limitations would be longer, right? Four years. And what you've done is, or Raytheon has done, is shortened it by 75%. So why isn't that critical information? The... Are you asking, Your Honor, whether the one-year period is reasonable? Is that the question? No, I don't... That's not... No, I have no problem with the right of the insurance company to contract with the employee for a shortened statute of limitation. My concern is that when they do that, that the employee is put on notice that it's only one year. And the employee was put on notice because the provision was in the summary plan description. And, Your Honor, if you look at where that provision is, it is under a heading that says other important information. Now, a parent argues that it was not conspicuous. Your Honor, when you see the heading important information in a document like this, it's the verbal equivalent of a red flag. If you are seeking to claim money based on the provisions of this document... But the way I see it is the disability provision relates to your claim against the company and how you process that. And then you have another provision that talks about enforcement. And enforcement talks about when you've gotten an adverse determination or how you get documents from the company, when you've gotten an adverse determination, the right to file a suit. Why isn't it, regardless of its being in disability, why isn't it in the enforcement section? That's a good question, Your Honor. And to – could I ask the Court to maybe turn to that section? It's easier to explain it if we are actually looking at it. This is on ER-135. ER-135? Yes, Your Honor. Now, there are several things about this administrative section that you need to understand. And the most important for purposes of this particular provision is that it addresses not just disability benefits, but all of the benefits that Raytheon offers, 11 in total. All the ERISA rights... It includes the ERISA. I'm sorry? It includes the disability. It includes disability, but it has all the other benefits as well, including pension and life and AD&D and all those. The whole list of them is on... Do you have the different statute of limitations for each one? I don't know. I haven't seen the other plans, so I don't know. Your point might be that then you'd have to list each statute of limitation. But if it's one year in every plan, why not put it there? We don't have those in the record, I don't think. The remaining sections... I thought that's what she was arguing, but I guess she's... Yes, that is actually what I was arguing. You can't argue that if it's not in the record and you didn't, you know, present it to us that there is a different statute of limitations for each type of claim. Well, I'm not saying there is a different statute of limitations for the other claims. What is it you want us to look at on page 135? I beg your pardon, Your Honor? What shall I look at on page 135? You see the second heading that says enforce your rights? At what line? It's the third paragraph. It's after the second paragraph. After the second paragraph? Yes. In addition? That starts with the words in addition? It starts with if your claim for a pension or welfare benefit is denied. If where? If your... I got one paragraph. Well, that's the first. If your claim for a pension or welfare benefit is denied or ignored, and more in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge and to appeal any denial within certain time schedules. Okay. All right. Appeal to where? I think that what the appellant is referring to is the last sentence of the second paragraph. The last sentence. If you have a claim for benefits that is denied or ignored, and more in part, you may file suit in State or Federal court. I believe that's, yes. But it doesn't tell you when you have to file it. Exactly. And that was my point. Now, Your Honor, it's true that I don't know what the limitations periods in the other plans are. There could be none. The... I mean, so I read that. So why is that important? Well, it's important because I think what the appellant is arguing is that the 1-year limitations period should have gone there. Well, it's more than that. It's that this paragraph addresses ERISA. The ordinary statute of limitations for ERISA is 4 years. Raytheon has changed that. So to put to make it clear and conspicuous, it ought to be in that part that says you can file a suit in a State or Federal court within 1 year from denial. That's what I gather he's arguing. And my response to that, Your Honor, is, first of all, the statute is not 4 years uniformly across the country. It varies from State to State because it's analogous to the statute of limitations for breach of contract. Well, where did he issue this? California? Or where? This is California. Okay. So this is the California part. I'm sorry. We're talking about Raytheon and the San Fernando Valley? Yes. Yes. Near the airport over there. Yes. That's right. Yeah. But let me so who makes the payments? When the company makes the payments on the plan, where does the money go? The long-term disability plan, Your Honor, is funded by a trust, which in turn is funded entirely by employee contributions. So it's 100% employee contributions. The short-term disability plan is funded 75% by Raytheon Company and 25% by the trust. And I'm glad you raised that point, Your Honor, because I think the court should also be aware of the practical consequences of refusing to enforce this provision, the practical consequences of a self-funded plan such as this. As I was telling you, Judge Wardlaw, the limitations periods vary from state to state. In California, it's four. In Arizona, which is within the Ninth Circuit, it's six. In some western states, it's as much as ten. So if you were to refuse to enforce this provision, then you're exposing the plan to lawsuits. Going back many, many years, the payments for those lawsuits, not just payments of benefits, but defense costs, settlement costs, everything comes directly from the plan. Because it is a self-funded plan and because the risk pool is fairly limited, it's more difficult for a plan like this to absorb those financial shocks than, for example, an insured plan. So to the extent — Well, how many people do you have suing you that filed suit after the one year? As far as I'm aware, this is the first suit, and then there was another one recently in Arizona, the Solene case that we brought to the Court's attention in our 28-J letter. So regardless of the fact that there's different ERISA statutes of limitations, Ray then wants the one-year statute of limitation to be uniform, right? Yes. Well, if that's the case and they really are different and you use the same booklet everywhere, why don't you make it really clear and conspicuous that it's going to be one year everywhere? The plan doesn't say it's only one year in California. The plan says it's one year. This plan applies to Raytheon employees nationwide, and all of them, Your Honor, are bound by this one-year provision. But the question is — We want it conspicuous. Conspicuous. You got that word, conspicuous. Well, Your Honor, if you put a provision under a heading that says important information, how much more conspicuous can you get in a document? I mean, the rule that this Court enunciated in Sal Torelli was that the provision should attract the attention of the reasonable layman. Your Honor, this invites the attention of a reasonable layman. Right. Okay. So I'm a reasonable layman, and I've just gone through the ringer and fought my claim, fought my claim. It's finally denied. I'm told I can go sue. Where do I look? I look at enforce your rights. How am I going to enforce this right? Well, let's say — let's say for argument's sake that we put the provision here. Okay? But think about how it would have been worded here. This — this section applies to all the — all the plans, not just the disability plans. The one-year limitations period applies only to the disability plan. So you would have to put it in some kind of footnote or some kind of carve-out. And that sort of placement is — The one-year applies only to disability. That I do know. No, I know. How do we know from the record? I'm sorry, but it's not clear from the record. We submitted to the — into the record only the relevant plans, which is the — the disability, SPD, and the administrative section. You're saying that a person who has been denied disability benefits — I mean, in essence, you're saying someone who has been denied disability benefits is charged to look at at least two things. One is the disability section itself about those benefits, and then secondly, also the administrative section. No, Your Honor. The administrative section is there mainly as a sort of compliance provision. The plans are required to have this administrative section. If you look at the beginning of this section on ER 128, it tells you in the third bullet point, this information is provided to meet the disclosure requirements for health, welfare, and defined contributions plans. And then it gives you seven statutes. So this is to comply with the requirements of those seven statutes. The regulation that I referenced earlier requires the claim administrator in the letter to tell the claimant exactly how to perfect an appeal if the claim is denied. So it is possible for a claimant to actually go through the internal review process without looking at the administrative section of the plan. Sotomayor, so you're saying the administrative section has to do with internal administration, in the four corners of the plan itself, and not how to go to court? The administrative section has got to do with all the rules that Raytheon has to comply with under these seven statutes, all the information that has to be disclosed, that is required to be disclosed under Federal law, under these statutes, all that goes into the administrative section. It's the last chapter of the S.P.E. Ginsburg, you just referred us to a section that starts out, the prior sections describe specific provisions of various benefit plans and programs available to you. Then it says, in addition to understanding these provisions, it is important that you know about your rights as a participant in these plans. And then the very next paragraph talks about your rights, again, as a participant, and it talks about your rights under ERISA. I'm sorry, Your Honor, which page are you reading? The page you just referred us to, 128. And you're telling the employee, you really need to read this section, because this is involved. It says it twice. Your rights as a participant in these plans, your rights as a participant. But you are also referring the employee to the summary plan description for each of the rate and benefit plans. You are specifically referring the employee to that. Now, my point to Judge Graber is, even if the claimant did not read the administrative section, it would prejudice her. She would still know how to perfect her internal appeal. But she is required to read the disability section, because all the contractual provisions are in the disability section. And as ERISA itself says, all the provisions that would lead to a loss of benefits or a disqualification of benefits, all those are in the disability section, like the SSDI offset, for example. That would be in the disability section. Where's the say there? Where's the say there? Everything's in the disability section. I said that, Your Honor. The contractual provisions are all in the disability section. See, the administrative section is the compliance section. The contractual provisions are all in the disability section. So if you wanted to know, for example, how much money am I going to get, am I going to get 60 percent of my pre-disability income or 80 percent of my pre-disability income, that's going to be in the disability section. If you want to know are my benefits going to be offset by SSDI, that's going to be in the disability section. All those provisions. See, ERISA allows employers to design their own plans. And therefore, the disability section in every plan varies, whereas the administrative section has to be pretty much the same, because all employers are But the plan is funded by the employees. That's right. The plan is funded by the employees. The LTV plan is funded 100 percent. So all the money that goes into this plan goes to the employees. It comes from the employees. It comes from the employees. Right. In other words, the company doesn't pay anything. The company pays 75 percent of the short-term disability benefits. The short-term, right. Yes. That's right. You know, I mean, you've got all these pages here. I guess it's all the devil is all in the fine print, huh? Your Honor, that's just the point. In the disability section, there is no fine print. It's very user-friendly. It's clearly laid out. There is no fine print. No. And that's at page 138? That is page 127, 126, 127. 126. 27. 127. Actually, the disability section is page 115 through 127. 115 to 127. Page 115 through 127. Yes. Let's see if I've got it. Your Honor, may I? It says here. Let me look at this. It's important to note that under the applicable STD, ELD and occupational LTD plan documents, any action of law or in equity must be commenced within one year of the denial of the appeal from the initial claim. One year of the denial of the appeal from an initial claim denial. Okay. Regardless of any state or federal statutes. So it has to be commenced within one year of the denial of the appeal from any initial claim denial. That's when the company denies it? Is that it? Or MetLife denies it? MetLife is a claim administrator. Denial will come from MetLife, yes. Regardless of any state or federal state. Your Honor, may I address the issue? It's not a well-worded paragraph. I'm sorry? I said it's not a clear paragraph. Your Honor, it's hard to imagine how clear it could be. It tells the claimant that after the claim is denied, the final time, she has one year from that date on which to sue. Documents, any action in law or equity must be commenced within one year of the denial of the appeal. Denial of the appeal from an initial claim denial. So it's saying that one year, within one year after we turn you down, if you want to file a suit, you've got to do it within one year. No, Your Honor. The first sentence says if your claim is denied, you may appeal. That's the internal appeal within the plan. That's the internal appeal. It's the internal appeal. So you file a claim for benefits, you're denied once, you appeal. If you're denied again, then you have one year from that date on which to sue. So it must be commenced within one year. Well, what I mean is you could say that if you're going to sue us in a court of law, then you have one year to do that after we have turned you down, period. Right? That's correct. That's clear. That's clear. But one denial of the appeal from the denial of the initial claim. Oy vey, you know.  The appellant, Your Honor, doesn't argue that it's not clear or that it's ambiguous or anything like that. The only argument is it's not in the right place. That's the only argument. I know that. I know that. I know that. And if the court will let me, I would like also to address. Yeah, I've gone over 15 minutes over here, a lot of time. Very well, Your Honor. So, Grace, what is the issue you want to address, the whole issue? Well, actually, I think that the court was concerned. And the appellant talked about drastically shortening the limitations period as though that was some sort of disservice to the claimant. And I just want to. We don't have a problem with that. It's not an issue on PR. It's not an issue. And then I also wanted to address the question about Federal common law and why legally rule of Federal common law such as the appellant has suggested would be legally. Which one? The duty to inform that's borrowed from the California State? Correct. Yeah, don't worry about that one either. Okay. Okay. In that case, unless you have any more questions. Thank you very much. Thank you. Your Honor, it's been a long day, so I'll be very brief. And I just wanted to address what seems to be a common theme running through counsel's argument. And that theme seems to be, well, we did them in when that was required. You heard counsel talk about the administrative section being a compliance section. In other words, it's only there because they have to put it in there. And you heard counsel talk about the regulation that governs claims and says, we met the bare minimums of what that regulation requires. I'm not sure that's true, and that's what the Solian case, which was cited by counsel, talks about. I'll just refer the Court to that case for that discussion. But even if that's true, even if a defense met the minimum regulatory and statutory requirements, it's at odds with what ERISA imposes on fiduciaries in these cases. As the Supreme Court stated in its last ERISA case, Metlife v. Glenn, ERISA imposes a higher-than-marketplace quality standard on claim administrators who have a special standard of care to discharge their duties solely in the interest of the participants and beneficiaries of the plan. So the relationship between Raytheon and Ms. Scharf in this case is not a contractual one. They have a fiduciary duty to make sure that her rights are protected and that she has, quote, ready access to the federal court systems to vindicate her rights. And so that's why we're taking the position that we are, is that they have a fiduciary duty to really take the extra step and not do the minimum and really advise Ms. Scharf and other claim centers' situation of these shorter time limits. Thank you. I think that takes care of the day. What did you say? The appellant submitted the 28-year letter last afternoon about 215. Do you want to respond to it? No. I was going to ask if you would give us an opportunity to respond in writing to that. Yes, sure. Within a week, if we could get back to you on the Glenn issue. Which issue? The Glenn case. The Glenn case. The Glenn case. It's about the standard of court review. That's what we thought. We're familiar with the case. I'm familiar with the case, but I didn't think it was relevant to this case. Well, go ahead and send us a letter. Okay. We like to get mail. Thank you very much. All right. Sure. I'm sorry. I hope you're correct. The appellant has also submitted a similar letter of additional authorities. Do you want to answer that, too? Yes, Your Honor. All right. Sure. Is there any limit you would like to place on that? How about five pages each? Five pages? Maximum, each side. Thank you, Your Honor. Well, it all depends on double space. Double space. Good margins. Only one side. Okay. Thank you. Thank you. All right. All rise for the presentation of the jury.
judges: Pregerson, Graber, Wardlaw